**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BLUEFIELD DIVISION**

| | | |
|---|---|---|
| **LEONTE MACK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No. 1:20-00354** |
| | ) | |
| **UNITED STATES OF AMERICA**, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court is Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 44), filed on August 31, 2020. The Court notified Plaintiff pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the Defendants in moving to dismiss. (Document No. 50.) On September 28, 2020, Plaintiff filed his Response in Opposition. (Document No. 54.) Having examined the record and considered the applicable law, the undersigned has concluded that Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 44) should be granted.

**PROCEDURAL HISTORY**

On June 1, 2020, Plaintiff, acting *pro se* and incarcerated at FCI McDowell, filed his Amended Complaint for alleged violations of his constitutional and civil rights pursuant to <u>Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 91 S.Ct. 1999, 24

L.Ed.2d 619 (1971) and negligent conduct pursuant to Federal Tort Claims Act [FTCA], 28 U.S.C. §§ 1346(b) and 2671, *et seq.*[1] (Document No. 8.) In his Amended Complaint, Plaintiff names the following as Defendants: (1) United States of America; (2) Warden John Doe; (3) Warden Jane Doe; (4) Warden C. Maruka; (5) MD Maurice Yu; (6) Associate Warden D. Rich; (7) CNP Jennifer Armstrong; (8) PA John Doe; (9) Ms. Rife, Case Manager Coordinator; (10) Physician Assistant ["PA"] Carothess; (11) Ms. Weaver, X-ray; (12) PA Jane Doe; and (13) Ms. Huffman, Unit Manager. (Id.) Plaintiff alleges that Defendants are acting with negligence and deliberate indifference concerning his osteoarthritis. (Id.) Plaintiff contends that an x-ray conducted in 2016 revealed an "abnormality" in his left hip that was causing his pain and suffering. (Id.) Plaintiff complains that he was only evaluated by PAs and doctors that were "not specialists in the field of osteoarthritis." (Id.) Plaintiff states that neither PA Carothess nor PA Jane Doe were "osteoarthritis specialist, or medical doctors, qualified or certified to make a medical diagnosis" of Plaintiff's condition or recommend any course of treatment. (Id.) Plaintiff claims that the PAs and doctors "only told Plaintiff to purchase Ibuprofen that did not cure Plaintiff's medical issues [and] only allowed it to get worse." (Id.) Plaintiff alleges that PA Carothess and PA Jane Doe knew of Plaintiff's "ongoing medical situation from numerous visits to medical, but repeatedly charged a $2.00 inmate co-pay for the medical visit then another $2.75 for Plaintiff to pay for Ibuprofen." (Id.) Plaintiff alleges that Defendant Armstrong "had Defendant Weaver take an x-ray, then changed Plaintiff's care level to Care Level 2 because of how severe the osteoarthritis had

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

progressed." (Id.) Plaintiff alleges that CNP Jennifer Armstrong provided him with a "medical duty status" for a first-floor and lower bunk housing placement. (Id.) Plaintiff contends that Defendant Rife and Huffman have been ignoring the "medical duty status" for first-floor, lower bunk, housing for years. (Id.) Plaintiff states that in 2018, Defendants Rife and Huffman knew of his medical condition and need for first-floor and lower bunk housing, but Defendants Rife and Huffman "deliberately and maliciously allowed Plaintiff to be moved from a first-floor unit to an upper tier unit (3 stories climb to bottom floor)." (Id.) Plaintiff states that despite his medical need for first-floor and lower bunk housing, Defendant Rife and Huffman have yet to change Plaintiff to first-floor and lower bunk housing. (Id.) Plaintiff states that he has been required to climb three stories, in extreme pain, for years. (Id.) As relief, Plaintiff requests monetary damages and other relief the Court deems appropriate. (Id.)

As Exhibits, Plaintiff attaches the following: (1) A copy of his "Medical Duty Status" (Document No. 8-1, p. 1.); (2) A copy of Plaintiff's request for a transfer based upon his medical needs dated April 16, 2020 (Id., p. 2.); (3) A copy of Plaintiff's letter to the Warden regarding his medical needs (Id., p. 3.); (4) A copy of Plaintiff's letter dated April 25, 2020, to Mr. Rich regarding his medical needs (Id., p. 4.); (5) A copy of Plaintiff's "MXR Commissary Order Form and Price List" (Id., pp. 5 - 6.); (6) A copy of Plaintiff's "Inmate Request to Staff Member" (Id., p. 7.); (7) A copy of Plaintiff's letter dated April 7, 2020, to the Warden regarding his medical needs (Id., p. 8.); (8) A copy of Plaintiff's letters to Mr. Rife regarding his medical need for first-floor, lower bunk housing (Id., p. 10 - 11.); (9) A copy of Plaintiff's letters to Unit Manager Huffman regarding his medical need for first-floor, lower bunk housing (Id., p. 12 - 13.); (10) A copy of Plaintiff's "Medical Cop Out" to Ms. Armstrong (Id., p. 15.); (11) A copy of Plaintiff's

3

Affidavit in Support (Document No. 9.); (12) A copy of Plaintiff's x-ray report (Document No. 11); and (13) A copy of Plaintiff's "Log Book" with notes (Document No. 15 – 17, 55 – 58, 61.).

By Order entered on June 30, 2020, the undersigned directed the Clerk to issue process in this case by preparing and serving a Summons and a copy of Plaintiff's Amended Complaint upon each Defendant as specified in Rule 4(i)(1) - (3) of the Federal Rules of Civil Procedure. (Document No. 18.) The Clerk's Office issued process the same day. (Document No. 20.) On July 15, 2020, Plaintiff filed his letter-form Motion to Extend Time to Finish BOP Remedies. (Document No. 33.) By Order entered on July 16, 2020, the undersigned denied Plaintiff's above letter-form Motion. (Document No. 34.) Specifically, the undersigned notified Plaintiff that he must fully exhaust his administrative remedies *prior* to filing action and that "[i]t is well established that exhausting administrative remedies *after* a Complaint is filed will not save a case from dismissal." (Id.) The undersigned, therefore, notified Plaintiff that "if he wishes to fully exhaust his administrative remedies prior to seeking relief, he should voluntarily dismiss this action and initiate a new action upon completion of the administrative remedy process." (Id.) On July 20, 2020, Plaintiff filed his second letter-form Motion to Extend Time to Finish BOP Remedies. (Document No. 35.) By Order entered on July 21, 2020, the undersigned denied Plaintiff's above letter-form Motion. (Document No. 36.) The undersigned again notified Plaintiff that "if he wishes to fully exhaust his administrative remedies prior to seeking relief, he should voluntarily dismiss this action and initiate a new action upon completion of the administrative remedy process." (Id.)

On August 31, 2020, Defendants filed a "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" and Memorandum in Support. (Document Nos. 44 and 47.) Defendants

4

argue that Plaintiff's FTCA claim should be dismissed based on the following: (1) Plaintiff failed to exhaust his administrative remedies (Document No. 47, pp. 11 – 12.); and (2) Plaintiff failed to comply with the MPLA (Id., pp. 12 – 15.). Defendants argue that Plaintiff's <u>Bivens</u> claim should be dismissed based on the following: (1) Plaintiff failed to exhaust his administrative remedies (Id., pp. 16 – 17.); (2) Plaintiff failed to file his <u>Bivens</u> action within the prescribed time period (Id., pp. 18 – 19.); (3) Dismissal of the complaint pursuant to Rule 8 is appropriate (Id., p. 20.); (4) Plaintiff fails to allege any personal involvement by Defendant Maruka, Rich, Carothers, Armstrong and Weaver in the alleged violation of his constitutional rights (Id., pp. 21 – 22.); (5) Plaintiff has failed to establish deliberate indifference to his medical needs (Id., pp. 22 – 27.); and (6) Defendants are entitled to qualified immunity (Id., pp. 27 – 28.).

As Exhibits, Defendants attach the following: (1) The Declaration of Jennifer Armstrong (Document No. 44-1, pp. 2 – 6.) (2) A copy of Plaintiff's "Inmate History - Adm-Rel" (Id., pp. 8 - 9.); (3) A copy of Plaintiff's pertinent medical records (Id., pp. 11 - 135.); (4) A copy of emails regarding a lower unit pass for Plaintiff (Id., pp. 137-41.); (5) A copy of the "Care Level Classification for Medical and Mental Health Conditions or Disabilities" (Id., pp. 143-64.); (6) A copy of Plaintiff's Inmate Profile (Id., pp. 165-66.); (7) The Declaration of Marlana Rife (Id., pp. 168-70.); (8) A copy of Plaintiff's Inmate History-Quarters Assignment (Id., pp. 172-74.); (9) A copy of the Declaration of Destiny Spearen (Id., pp. 176-77.); and (10) A copy of Plaintiff's Administrative Remedy Generalized Retrieval (Id., pp. 179-81.).

Notice pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on September 10, 2020, advising him of the right to file a response to Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgement." (Document No. 50.)

5

On September 28, 2020, Plaintiff filed his Response in Opposition to Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment." (Document No. 54.)

## Summary of Medical Records

A review of Plaintiff's medical records reveal that after Plaintiff arrived at FCI McDowell, an intake medical screening was conducted on March 25, 2016. (Document No. 44-1, pp. 16 - 20.) During the screening, Plaintiff informed RN W. Walters that he suffered from arthritis in his left groin and that he had been prescribed Meloxicam for this condition.[2] (Id.) RN Walters continued Plaintiff's prescription for Meloxicam. (Id.) On December 9, 2016, Plaintiff was taken to an outside facility for an x-ray of his hip. (Id., pp. 11 and 53.) The x-ray report noted moderate osteoarthritis of the left hip joint. (Id., p. 53.) On February 9, 2017, it was determined that Plaintiff's condition warranted a bottom tier pass and a bottom bunk pass due to his reported worsening of his condition. (Id., p. 3.) On August 2, 2017, Plaintiff reported to sick call complaining of injuring his knee after falling while running over a pole in the recreation area. (Id., pp. 36 - 38.) Plaintiff was examined by PA Chandra Carothers, who noted no swelling or bruising. (Id.) PA Carothers noted that Plaintiff was observed to be ambulating fine without assistance, and he displayed a normal gait. (Id.) PA Carothers ordered an x-ray, instructed Plaintiff as to RICE therapy, and gave him a commissary slip for Tylenol. (Id.) The x-ray was performed on August 11, 2017, revealing "prepatellar soft tissue swelling" and "otherwise, unremarkable left knee radiographs." (Id., p. 51.) On March 2, 2018, Plaintiff reported to sick call complaining of a rash on his upper chest. (Id., p. 3.) During this visit, Plaintiff did not report any pain in his hip. (Id.)

---

[2] Meloxicam is a nonsteroidal anti-inflammatory medication used to treat pain and inflammation caused by arthritis.

In February 2019, Health Services staff was notified by Plaintiff's Unit Team members that Plaintiff wished to forfeit his "lower floor/lower bunk" pass. (Id., pp. 3 and 139-41.) Since the first-floor unit (Unit B2) where Plaintiff was assigned was being closed, all inmates assigned to this unit had to be reassigned to other units where space was available. (Id.) Plaintiff notified staff that he wished to remain with inmates from the B2 Unit when these inmates were transferred to another upper floor unit. (Id.) Plaintiff, therefore, was permitted to waive his pass and remain with his fellow inmates upon transfer to the upper unit because his "lower floor/lower bunk" pass was not considered medically necessary but was for his comfort and ease. (Id.) On May 14, 2019, Plaintiff reported to Health Service complaining of "feeling weak" and requesting testing for diabetes. (Id., pp. 55 – 57, 71 - 73.) Plaintiff denied the weakness was related to the time of day, diet, or activity. (Id.) Plaintiff noted that he had been working out daily for at least two hours doing various cardio exercises. (Id.) Plaintiff, however, reported no pain or aggravation of his osteoarthritis condition. (Id.) PA Ashley Stark ordered lab work and instructed Plaintiff to return immediately if his condition worsened. (Id.)

On March 12, 2020, Plaintiff reported to Health Services complaining of increased left hip pain and requesting a lower bunk pass. (Id., pp. 108-09.) Nurse Practitioner ("NP") Jennifer Armstrong evaluated Plaintiff, who noted that Plaintiff had a normal gait and normal range of motion. (Id.) NP Armstrong ordered new imaging of Plaintiff's left hip and instructed Plaintiff to use Ibuprofen as needed for pain. (Id.) NP Armstrong further advised Plaintiff that his x-ray would need to be reviewed prior to issuing a lower bunk pass. (Id.) On March 27, 2020, Plaintiff was transported to an outside facility where x-rays were performed. (Id., pp. 105-06, 134.) The x-ray report revealed progressive osteoarthritis of the left hip join, which was severe. (Id.) As result of

x-ray report, Plaintiff was enrolled in the Chronic Care Clinic[3] and prescribed 800 mg of Ibuprofen to be taken three times a day. (Id.) On April 24, 2020, Plaintiff submitted a sick call request complaining of continued left hip pain despite taking Ibuprofen and requesting a change of his Care Level. (Id., pp. 102-04.) Plaintiff was examined by NP Armstrong, who noted that Plaintiff appeared to be experiencing pain, had a guarded gait, hip tenderness, and decreased range of motion. (Id.) NP Armstrong prescribed Cymbalta for treatment of Plaintiff's osteoarthritis pain. (Id.) NP Armstrong also submitted consult requests for an MRI and referral to an orthopedic surgeon. (Id.) Finally, NP Armstrong advised Plaintiff that she could not change his Care Level status but she would discuss such with the Health Service Administrator. (Id.)

On June 16, 2020, Plaintiff was evaluated by an outside orthopedic surgeon. (Id., pp. 3, 98 - 101.) The orthopedic surgeon advised that Plaintiff would need a hip joint injection, and if the injection did not help, Plaintiff would need a hip replacement operation. (Id.) On July 2, 2020, Plaintiff reported to Health Services complaining of the side effects from the Cymbalta. (Id., pp. 92 – 94.) Plaintiff was evaluated by NP Armstrong, who discontinued Plaintiff's prescription for Cymbalta and prescribed Amitriptyline. (Id.) NP Armstrong further noted that she had submitted a consultation requested for Plaintiff to have an x-ray guided left hip injection based upon the outside orthopedic surgeon's recommendation and Plaintiff's increased pain. (Id.) NP Armstrong further noted that the outside orthopedic surgeon recommended that Plaintiff lose 20 pounds since he may need a hip replacement. (Id.) Finally, NP Armstrong noted that she emailed Dr. Dankwa regarding an increase of Plaintiff's Care Level to 2. (Id.) On July 22, 2020, Plaintiff was

---

[3] The Chronic Care Clinic is a BOP Health Services program for inmates with ongoing medical needs to be tracked and seen by a health care provider at clinically appropriate intervals.

redesignated as a Care Level 2 inmate and designated for transfer to an institution that will meet his security, programming, and healthcare needs. (<u>Id.</u>, p. 6.) On July 24, 2020, Plaintiff had an MRI performed at an outside facility. (<u>Id.</u>, p. 5.) On July 29, 2020, the outside orthopedic surgeon performed the left hip injection under fluoroscope at an outside clinic. (<u>Id.</u>, pp. 5 and 87.)

## THE STANDARD

### Motion to Dismiss

A Rule 12(b)(6) motion requests dismissal for failure to state a claim upon which relief can be granted and tests the legal sufficiency of the complaint or pleading. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)(<u>quoting</u> <u>Bell Atlantic Corporation v. Twombly</u>, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. <u>Id.</u> "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." <u>Twombly</u>, 550 U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. <u>Denton v. Hernandez</u>, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992); <u>also see</u> <u>Goode v. Central Va. Legal Aide Society, Inc.</u>, 807 F.3d 619 (4th Cir. 2015).

**Summary Judgment**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## DISCUSSION

1.  **FTCA Claim:**

    A.    **Failure to Exhaust:**

An inmate "can sue under the FTCA to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of

10

the negligence of a government employee." United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). The FTCA provides at Section 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

The FTCA does not create a new cause of action. Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001). The statute merely waives sovereign immunity and "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." Id. Thus, the FTCA is a limited waiver of sovereign immunity. This waiver is subject to the condition that an administrative claim must first be submitted to the appropriate agency and denied before suit can be filed. See 28 U.S.C. § 2675(a).[4] See also Bellomy v. United States, 888 F. Supp. 760 (S.D.W.Va. 1995). As a general matter, filing a timely administrative claim is jurisdictional and cannot be waived. Ahmed v. United States, 30 F.3d 514, 516 (4th Cir. 1994) (citing Henderson v. United States, 785 F.2d 121, 123 (4th Cir. 1986); Muth v. United States, 1 F.3d 246 (4th Cir. 1993); Gibbs v. United States, 34 F.Supp.2d 405 (S.D.W.Va. 1999). Thus, before an inmate can bring a claim under the FTCA, the inmate must exhaust

---

[4]  Title 28 U.S.C. § 2675(a) provides as follows:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

procedures specified at 28 C.F.R. §§ 14.1 to 14.11 and 543.30 to 543.32. Additionally, the Court cannot hold the case in abeyance while a plaintiff presents an administrative tort claim with the appropriate agency.[5] See Plyer v. United States, 900 F.2d 41, 42 (4th Cir. 1990)("Since the district court has no jurisdiction at the time the action was filed, it could not obtain jurisdiction by simply not acting on the Motion to Dismiss until the period had expired."). 28 U.S.C. § 2401(b) provides that a tort claim must be presented to the appropriate federal agency within two years after the claim accrues and the lawsuit must be commenced within six months after the receipt of a final agency decision.

The United States contends that Plaintiff never filed an administrative tort claim with the agency regarding his medical treatment at FCI McDowell. (Document No. 47, pp. 11 – 12.) In support, the United States submits the Declaration of Ms. Destiny Spearen, a Paralegal for the Consolidated Legal Center located at FCI Beckley. (Document No. 44-1, pp. 176-77.) Ms. Spearen declares that in her position she has access to SENTRY, the Bureau of Prisons' online system containing, among other things, information about inmates' administrative remedy filings and administrative tort claim filings. (Id., p. 176.) Specifically, Ms. Spearen states as follows in her Declaration (Id., p. 177.):

---

[5]  The administrative process which inmates must exhaust when they have complaints under the FTCA is spelled out at 28 C.F.R. §§ 14.1 - 14.11. To exhaust administrative remedies as required before filing an action under the FTCA, the inmate must first submit an administrative claim including a claim for money damages in a sum certain for the alleged injury sustained on a Standard Form 95 to the Federal agency whose activities gave rise to the claim. *Id.*, § 14.2(a) and (b)(1). After investigation and examination and informal attempts at resolving the inmate's claim as the circumstances may require, *Id.*, §§ 14.6 and 14.8, the agency may deny or approve the inmate's claim. If the agency denies the inmate's claim, she may file suit in the District Court within six months of the mailing of the denial. *Id.*, § 14.9(a). The Director of the Federal Bureau of Prisons is authorized to settle meritorious administrative Federal tort claims by providing monetary compensation. 28 C.F.R. §§ 0.96(k) and 0.172.

9.       . . . Plaintiff has not exhausted his administrative claim in relation to his FTCA claims against the United States.

10.      Specifically, he has not filed a form SF-95 or other document containing the required information alleging negligence on the part of any employee of the United States with the BOP.

(Id.) As an Exhibit, Ms. Spearen attaches a copy Plaintiff's "Administrative Remedy Generalized Retrieval." (Id., pp. 178-81.) The United States, therefore, argues that Plaintiff's FTCA claim must be dismissed for failure to exhaust. (Document No. 47, pp. 11 – 12.) In his Response, Plaintiff fails to dispute that he failed to exhaust. (Document Nos. 54, 54-1, 54-2, 54-3, 54-4, and 54-5.) Plaintiff, however, argues that he is currently exhausting his administrative remedies and is "waiting on [a] response." (Document No. 54-1, pp. 1 – 2.)

Based upon a review of the record, the undersigned finds that Plaintiff failed to properly exhaust his FTCA claim. Although Plaintiff contends that he is currently exhausting his administrative claim, such does not save the instant action from dismissal for failure to exhaust. Plaintiff must fully exhaust his administrative claim *prior* to filing his FTCA action. Prior to bringing a FTCA claim in federal court, "a claimant shall have *first* presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified registered mail." 28 U.S.C. § 2675(a)(emphasis added). This claim-filing requirement is jurisdiction and cannot be waived. See Ahmed v. United States, 30 F.3d 514, 516 (4th Cir. 1994)(citation omitted); Pyler v. United States, 900 F.2d 41, 42 (4th Cir. 1990); Lamerique v. United States, 2019 WL 2932673, * 10 (S.D.W.Va. June 14, 2019). There is no dispute that Plaintiff failed to file an administrative claim prior to initiating the above action. Plaintiff's efforts to now exhaust by filing an administrative claim would not save his above action from being dismissed because he did not exhaust *prior* to filing the above action. Based on the foregoing, the

undersigned recommends that Plaintiff's FTCA claim be dismissed in view of his failure to exhaust prior to filing his Complaint. Notwithstanding the foregoing, the undersigned will also consider the United States' argument that Plaintiff failed to satisfy the requirements of the MPLA.

**B.    Failure to satisfy the requirements of the MPLA.**

In the present case, Plaintiff alleges that Defendants' negligent acts occurred in the State of West Virginia. Accordingly, West Virginia State law applies. Under West Virginia law, a plaintiff must satisfy certain prerequisites prior to filing suit against a health care provider. Specifically, a plaintiff must serve each defendant health care provider with a notice of claim with an attached screening certificate of merit executed under oath by a health care provider qualified as an expert under the West Virginia Rules of Evidence at least thirty (30) days prior to filing suit. W. Va. Code § 55-7B-6.[6] Compliance with West Virginia Code § 55-7B-6 is mandatory prior to

---

[6]    West Virginia Code § 55-7B-6 provides the following in pertinent part:

> (a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying the provisions of this section.

> (b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening

14

filing suit in federal court. Stanley v. United States, 321 F.Supp.2d 805, 806-07 (N.D.W.Va. 2004); also see Starns v. United States, 923 F.2d 34 (4th Cir. 1991)(holding that Virginia's medical malpractice liability cap applies to claims brought against the United States under the FTCA). West Virginia Code § 55-7B-6(c), however, provides that no screening certificate of merit is necessary where "the cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care."

Plaintiff alleges that medical Defendants acted with negligence in diagnosing and providing medical treatment for his osteoarthritis. In its Motion, the United States contends that Plaintiff's claim should be dismissed because he failed to timely and properly file a notice of claim and a screening certificate of merit pursuant to the MPLA. (Document No. 47, pp. 12 – 15.) In his Response, Plaintiff failed to address or dispute the foregoing. ((Document Nos. 54, 54-1, 54-2, 54-3, 54-4, and 54-5.)

Under West Virginia law, "[i]t is the general rule that in medical malpractice cases, negligence or want of professional skill can be proved only by expert witnesses." Syllabus Point 2, Roberts v. Gale, 149 W.Va. 166, 139 S.Ed.2d 272 (1964). Expert testimony, however, is not required "where the lack of care or want of skill is so gross as to be apparent, or the alleged breach relates to noncomplex matters of diagnosis and treatment within the understanding of lay jurors by resort to common knowledge and experience." Farley v. Shook, 218 W.Va. 680, 629 S.E.2d 739 (2006). The MPLA provides as follows concerning claims "based upon a well-established legal

---

certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of Rule 15 of the Rules of Civil Procedure.

theory of liability":

> Notwithstanding any provision of this code, if a claimant or his or her counsel, believes that no screening certificate of merit is necessary because the cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care, the claimant or his or her counsel, shall file a statement specifically setting forth the basis of the alleged liability of the health care provider in lieu of a screening certificate of merit.

West Virginia Code § 55-7B-6(c). In <u>Johnson v. United States</u>, 394 F.Supp.2d 854, 858 (S.D.W.Va. 2005), the Court held that plaintiff's statement on his administrative claim form alleging improper surgical implantation of a prosthesis satisfied the provisions of the MPLA permitting the filing of a claim without submitting a certificate of merit. <u>Id.</u> The Court reasoned that plaintiff's claim was based upon a well-established legal theory of liability and expert testimony was not required to show a breach of the standard of care because plaintiff stated on his form that the surgeon "implanted the too large Prosthesis backward causing diminished bloodflow and subsequent Necrosis and infection." <u>Id.</u> at 858.

Plaintiff does not dispute that he failed to serve the United States with a screening certificate of merit prior to filing suit. To the extent Plaintiff claims that his case falls within the exception to the screening certificate of merit requirement, the undersigned will consider such. Unlike the facts in <u>Johnson</u>, Plaintiff's allegations of negligence are complex and expert testimony is necessary. <u>See</u> <u>Giambalvo v. United States</u>, 2012 WL 984277 * 4 (N.D.W.Va. March 22, 2012)(finding that *Johnson* "is a rare exception to 'the general rule that in medical malpractice cases negligence or want of professional skill can be proved only by expert witnesses.'"). In the instant case, Plaintiff contends that medical staff failed to provide appropriate medical treatment for the osteoarthritis in his left hip resulting in the progression of his osteoarthritis to "severe." The

16

appropriate treatment for osteoarthritis and the reasoning for the progression of the condition is not within the common knowledge of lay jurors. Plaintiff contends that Defendants failed to timely recognize that his osteoarthritis was progressing and provide appropriate treatment/medication. It is not within a lay juror's common knowledge as the appropriate medication and dosage of medication for such a condition. Neither is it within a lay juror's common knowledge as to when to cease conservative treatment and pursue surgical options concerning osteoarthritis. Plaintiff is clearly alleging a breach in the standard of care. Accordingly, Plaintiff is not excused from filing a screening certificate of merit pursuant to West Virginia Code § 55-7B-6(c). The undersigned, therefore, recommends that the United States' Motion to Dismiss be granted as to Plaintiff's negligence claim.

**2.    Bivens Claim:**

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. at 395-97, 91 S.Ct. at 2004-05; See also Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending Bivens to Eighth Amendment claims); Davis v. Passman, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending Bivens to allow citizen's recovery of damages resulting from a federal agent's violation of the Due Process Clause of the Fifth Amendment.) A Bivens action is the federal counterpart of an action under 42 U.S.C. § 1983. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof

of causation between the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a claim under <u>Bivens</u> must show the violation of a valid constitutional right by a person acting under color of federal law.[7] The United States Supreme Court has held that an inmate may name a federal officer in an individual capacity as a defendant in alleging an Eighth Amendment constitutional violation pursuant to <u>Bivens</u>. <u>See Wilson v. Seiter</u>, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). However, <u>Bivens</u> claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities. <u>See FDIC v. Meyer</u>, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994); <u>Berger v. Pierce</u>, 933 F.2d 393, 397 (6th Cir. 1991); <u>Reinbold v. Evers</u>, 187 F.3d 348, 355 n. 7 (4th Cir. 1999).

In the instant case, Plaintiff contends that Defendants have violated his Eighth Amendment rights by acting with deliberate indifference concerning his osteoarthritis and charging him a co-pay for his medical visits. Specifically, Plaintiff complains that Defendants disregarded his need for a lower tier/bunk pass and failed to provide appropriate treatment for his osteoarthritis thereby

---

[7] Inmates may file claims of liability against the United States under the FTCA but may not assert claims of personal liability against prison officials for violations of their constitutional rights. *Carlson v. Green*, 446 U.S. at 21-23, 100 S.Ct. at 1472 -74. By contrast, under *Bivens* inmates may assert claims of personal liability against individual prison officials for violations of their constitutional rights but may not assert claims against the government or prison officials in their official capacities. The Supreme Court held in *Carlson*, 446 U.S. at 18 - 21, 100 S.Ct. at 1471-72, that an inmate could pursue a *Bivens* action independent of a FTCA action. The Court found that Congress did not intend to pre-empt a *Bivens* remedy when it enacted the FTCA. *Id.* The Court noted that the legislative history of the FTCA "made it crystal clear that Congress views FTCA and *Bivens* as parallel, complementary causes of action." *Id.*, 446 U.S. at 19 - 20, 100 S.Ct. at 1471 -72. Relying upon *Carlson*, the Fourth Circuit found that the availability of relief under the FTCA does not automatically foreclose a *Bivens* action. *Dunbar Corp v. Lindsey*, 905 F.2d 754, 762 (4th Cir. 1990). The Court pointed out other distinctions between FTCA and *Bivens* actions in *Dunbar Corp.*: (1) only compensatory damages are available in FTCA actions, whereas compensatory and punitive damages are available under *Bivens* and (2) FTCA claims must be tried to the Court, whereas *Bivens* claims may be tried to a jury. *Id*.

allowing it to progress.

**A.    Failure to Exhaust:**

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996) requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[8] Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Exhaustion of administrative remedies is also required when injunctive relief is requested. Goist v. U.S. Bureau of Prisons, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), aff'd, 54 Fed.Appx. 159 (4th Cir. 2003), cert. denied, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). "[A] court may not excuse a failure to exhaust" because the PLRA's mandatory exhaustion scheme "foreclose[es] judicial discretion." Ross v. Blake, ___ U.S. ___, 136 S.Ct. 1850, 1856-57, 195 L.Ed.2d 117

---

[8] 42 U.S.C. § 1997e(a) provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

(2016)("[A] court may not excuse a failure to exhaust, even to take [special circumstances] into account."). But the plain language of the statute requires that only "available" administrative remedies be exhausted. Id. at 1855("A prisoner need not exhaust remedies if they are not 'available.'") In Ross v. Blake, the Supreme Court set forth three scenarios where the administrative process is considered "unavailable": (1) The administrative process "operates as a simple dead end -- with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) The administrative process is so opaque that no ordinary prisoner can discern or navigate through the process; and (3) The "administrator thwart inmates from taking advantage of a grievance process through machination, misrepresentation or intimidation." Ross, 136 S.Ct. at 1859-60; also see Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983 or Bivens action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. See Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint

is filed will not save a case from dismissal. See Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in Neal, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. See Jones v. Bock, supra; Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005), *abrogated on other grounds by* Custis v. Davis, 851 F.3d 358 (4th Cir. 2017). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. Jones v. Bock, supra, 549 U.S. at 216, 127 S.Ct. at 921(Failure to exhaust is an affirmative defense that a defendant must generally plead and prove); also see Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving."

(Citations omitted)) The Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. "A court may sua sponte dismiss a complaint when the alleged facts in the complaint, taken as true, prove that the inmate failed to exhaust his administrative remedies." Custis v. Davis, 851 F.3d. 358, 361 (4th Cir. 2017); also see Banks v. Marquez, 694 Fed. Appx. 159 (4th Cir. 2017)(finding no error in the district court's decision to sua sponte dismiss petitioner's petition where petitioner explicitly admitted in his petition that he failed to exhaust his administrative remedies).

For Bivens purposes, proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." Dale v. Lappin, 376 F.3d at 655 (internal citations omitted); also see Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). The Federal Bureau of Prisons [BOP] has established an Administrative Remedy Program, 28 C.F.R. § 542.10, et seq., through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve her complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step

and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

In their Motion, Defendants argue that Plaintiff failed to exhaust his administrative remedies. (Document No. 47, pp. 16 - 18.) Specifically, Defendants contend that Plaintiff concedes he has not exhausted his administrative remedies in relation to his claims in his Motions to Extend Time to Finish BOP Remedies (Document Nos. 33 and 35). (Id., p. 18.) Defendants state that Plaintiff "offers no explanation for his failure to do so prior to filing suit, and nothing in the record

suggests the BOP's administrative remedy program is not available to him." (Id.) In support, the United States submits the Declaration of Ms. Spearen, a Paralegal for the Consolidated Legal Center located at FCI Beckley. (Document No. 44-1, pp. 176-77.) Ms. Spearen declares that in her position she has access to SENTRY, the Bureau of Prisons' online system containing, among other things, information about inmates' administrative remedy filings and administrative tort claim filings. (Id., p. 176.) Specifically, Ms. Spearen states as follows in her Declaration (Id., pp. 176-77.):

4.      I have reviewed Plaintiff's administrative remedy and administrative tort filing history and discovered Plaintiff has not exhausted his administrative remedies in relation to his claims.

5.      While incarcerated at FCI McDowell, Plaintiff has filed or attempted to file four administrative remedies.

6.      Only one of these remedies, 1028544-R1, related to medical care.

7.      This remedy was rejected because Plaintiff filed it directly to the regional level rather than first filing at the institutional level as is required.

8.      Accordingly, Plaintiff has not exhausted his administrative remedies in relation to his claims against individual staff members.

(Id.) As an Exhibit, Ms. Spearen attaches a copy Plaintiff's "Administrative Remedy Generalized Retrieval." (Id., pp. 178-81.) Defendants, therefore, argues that Plaintiff's Bivens claim must be dismissed for failure to exhaust. (Document No. 47, pp. 16 – 17.) In his Response, Plaintiff does not dispute that he failed to fully exhaust his administrative remedies. (Document Nos. 54, 54-1, 54-2, 54-3, 54-4, and 54-5.) Plaintiff merely argues that he is currently exhausting his administrative remedies and is "waiting on [a] response." (Document No. 54-1, pp. 1 – 2.)

Based upon a review of the record, the undersigned finds that Plaintiff failed to properly exhaust his administrative remedies pursuant to the PLRA. Although Plaintiff contends that he is

currently exhausting his administrative remedies, such does not save the instant action from dismissal for failure to exhaust. An inmate must fully exhaust his or her available administrative remedies *prior* to filing action. It is well established that exhausting administrative remedies *after* a Complaint is filed will not save a case from dismissal. See Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. As the Court stated in Neal, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process was to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted *before* the filing of a suit in Federal Court. Plaintiff's efforts to now exhaust his administrative remedies would not save his above action from being dismissed because he did not exhaust his remedies *prior* to filing the above action. Accordingly, the undersigned recommends that Plaintiff's Bivens claim be dismissed in view of his failure to exhaust prior to filing his Complaint. Based upon the foregoing, the undersigned finds it unnecessary to consider the other reasons which the Defendants have submitted for dismissal regarding Plaintiff's claims.

## **PROPOSAL AND RECOMMENDATION**

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and

accept the foregoing findings and **RECOMMENDS** that the District Court District Court **GRANT** Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 44), and **REMOVE** this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Faber and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: May 21, 2021.

Omar J. Aboulhosn
United States Magistrate Judge

26